UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:17-CV-00215-BR

| | |
|---|---|
| FRESENIUS MEDICAL CARE HOLDINGS, INC. d/b/a FRESENIUS MEDICAL CARE NORTH AMERICA, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| TOWN OF LILLINGTON, et al., | ) ) |
| Defendants. | ) ) |

ORDER

This matter is before the court on defendant Town of Lillington's (the "Town") motion to dismiss for lack of subject matter jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (DE # 13.) Plaintiff filed a response in opposition to the Town's motion. (DE # 20.) The Town did not file a reply. This matter is ripe for disposition.

Plaintiff is a corporation that owns and operates a hemodialysis facility in Lillington, North Carolina. (DE # 1, at 2.) On 4 May 2017, plaintiff filed the instant action against the Town, No. 1 Chinese Restaurant (the "Restaurant"), and Restoration & Reconstruction, Inc. ("ServPro"). Plaintiff's claims arise from a series of events that began when a sewer line connected to its Lillington facility became clogged in June 2014 due to the "Restaurant's continued dumping of grease and kitchen waste in its kitchen drains." (Id. at 3.) According to plaintiff, the Town attempted to clear the sewer line by applying high pressure water. (Id.) The application of the high pressure water caused raw sewage and kitchen grease to overflow into plaintiff's facility. (Id.) In response, plaintiff hired ServPro to remedy the flood damage. (Id.)

Plaintiff alleges the facility suffered extensive damage, for which plaintiff has paid over $250,000 to remediate. (Id. at 3-4.)

With respect to the Town, plaintiff alleges claims of (1) negligence, (2) a denial of due process in violation of 42 U.S.C. § 1983, (3) a denial of just compensation for an unlawful taking in violation of 42 U.S.C. § 1983, (4) inverse condemnation, and (5) violations of the North Carolina Constitution under Corum v. University of North Carolina, 413 S.E.2d 276 (N.C. 1992).[1] (Id. at 4-10.) The Town's motion seeks dismissal on the grounds that plaintiff's inverse condemnation and Corum claims fail to state a claim under Rule 12(b)(6) and that plaintiff's § 1983 claims are barred under Rule 12(b)(1) because they are unripe.

The court begins with the Town's Rule 12(b)(6) motion to dismiss plaintiff's inverse condemnation claim for failure to comply with the two-year statute of limitations contained in N.C. Gen. Stat. § 40A-51. Dismissal under Rule 12(b)(6) is appropriate "only when the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Darling v. Falls, 236 F. Supp. 3d 914, 920 (M.D.N.C. 2017). A statute of limitations affirmative defense may be properly raised under Rule 12(b)(6) if "the time bar is apparent on the face of the complaint." Dean v. Pilgrim's Pride Corp., 395 F.3d 471, 474 (4th Cir. 2005) (citation omitted).

Section 40A-51 is North Carolina's statutory remedy for inverse condemnation. It allows the owner of property taken by an act or omission of a local government authority to initiate an action for compensation where the property was taken without the filing of a complaint containing a declaration of taking. N.C. Gen. Stat. § 40A-51(a). The action must be filed in

---

[1] In Corum, the court recognized that plaintiffs may assert claims directly under the provisions of the North Carolina constitution when their constitutional rights have been violated and no adequate remedy exists under state law. 413 S.E.2d at 289. Plaintiff asserts its Corum claim in the alternative and relies on theories of inverse condemnation and a violation of due process. (DE # 1, at 10-11.)

2

North Carolina superior court and within two years of the taking (or the completion of the project involving the taking, whichever is later). Id.

Here, plaintiff does not argue that § 40A-51's limitations period has not expired and rightly so. Plaintiff alleges a physical taking occurred in June 2014 and lasted one day. (Compl., DE # 1, at 3, 7-9.) However, it did not file the complaint until 4 May 2017, well after the expiration of the limitations period. Nonetheless, in its response to the Town's motion, plaintiff maintains that § 40A-51's statute of limitations does not apply because its inverse condemnation claim is brought directly under the Fifth and Fourteenth Amendments to the United States Constitution and under the North Carolina Constitution's "law of the land" clause, Article I, Section 19. (See DE # 20, at 4-6.) The Town makes no argument regarding whether § 40A-51 is plaintiff's exclusive state remedy for inverse condemnation nor regarding the applicable statute of limitations to the extent plaintiff alleges a direct action under the United States or North Carolina Constitution. Accordingly, the court does not resolve these issues and presumes plaintiff's inverse condemnation claim is properly asserted under the United States and North Carolina Constitutions and not barred by any statute of limitations applicable to those theories.[2]

Alternatively, the Town argues that plaintiff's inverse condemnation claim under the North Carolina Constitution should be dismissed under Rule 12(b)(6) because the damages plaintiff alleges are consequential and incidental. Under North Carolina law,

> [a]n action in inverse condemnation must show (1) a taking (2) of private property (3) for a public use or purpose. *Advertising Co. v. City of Charlotte*, 50 N.C.App. 150, 153-54, 272 S.E.2d 920, 922 (1980). Although an actual occupation of the land, dispossession of the landowner, or physical touching of the land is not necessary, a taking of private property requires "a substantial interference with elemental rights growing out of the ownership of the property." *Long v. City of Charlotte*, 306 N.C. 187, 198-99, 293 S.E.2d 101, 109 (1982). A plaintiff must show an actual interference with or disturbance of property rights resulting in

---

[2] The court notes that this claim is therefore largely duplicative of plaintiff's § 1983 and Corum claims.

3

> injuries which are not merely consequential or incidental. *Id.* at 199, 293 S.E.2d at 109.
>
> While Black's Law Dictionary does not define the word *consequential*, it does define the term *consequential damages*, and from this definition, we may determine what the Supreme Court meant when it wrote of "injuries which are not merely consequential." *Consequential damages* means "[s]uch damage, loss or injury as does not flow directly and immediately from the act of the party, but only from some of the consequences or results of such act." Black's Law Dictionary 390 (6th ed. 1990). Black's Law Dictionary defines *incidental* as "[d]epending upon or appertaining to something else as primary; something necessary, appertaining to, or depending upon another which is termed the principal; something incidental to the main purpose." Black's Law Dictionary 762.

Adams Outdoor Advert. of Charlotte v. N.C. Dep't of Transp., 434 S.E.2d 666, 667-68 (N.C. Ct. App. 1993) (most alterations in original).

The Town relies on two cases to support its argument. One case that the Town cites is Long, quoted above. There, the North Carolina Supreme Court considered whether the plaintiffs could recover in trespass and nuisance—in addition to inverse condemnation—for flights occurring directly over their property. 293 S.E.2d at 104. The court stressed the importance of the requirement in "takings" cases that the plaintiff show "a substantial interference with the use and enjoyment of the land, not merely incidental damage," id. at 110, and recognized that "not every act or happening injurious to the landowner, his property, or his use thereof is compensable," id. at 109. Noting that the plaintiffs alleged the subject runway had made their property "'almost useless,' 'greatly diminished in value,' and 'almost unsellable and almost unliveable,'" the court concluded that the plaintiffs' sole remedy was inverse condemnation, and the trial court was therefore correct in dismissing their trespass and nuisance claims. Id. at 111.

In the other case on which the Town relies, Adams, the North Carolina Court of Appeals examined whether the trial court properly dismissed the plaintiff's complaint for inverse condemnation based on the alleged taking of its billboards. The plaintiff alleged that the North

4

Carolina Department of Transportation ("DOT") planted trees and vegetation on the state right-of-way adjacent to the plaintiff's billboards and that the vegetation obscured the billboards, rendering them "economically useless." 434 S.E.2d at 667. The appellate court determined that DOT's "planting of trees as part of its beautification project was [its] primary act, of which the obscuring of plaintiff's billboards was only a consequential or incidental result." Id. at 668. For that reason, along with others, the court held that the obstruction of the billboards did not amount to a taking and thus affirmed the trial court's dismissal of the complaint. Id. at 668-69.

The Town argues that plaintiff has failed to plead more than consequential or incidental damage because, like in Adams, "the Town's objective here was one of town maintenance, which consequentially resulted in an alleged de minimus intrusion into the Plaintiff's rights to their [sic] property." (Mem., DE # 14, at 7.) The court disagrees. Adams concerned DOT's purported interference with the "right" of the plaintiff's property to be seen, which the court declined to recognize as a basis for taking. This case, however, concerns a more direct interference with plaintiff's property. As noted above, plaintiff has alleged that the Town's application of high pressure water caused sewage and kitchen grease to overflow into plaintiff's property. It further alleges that the Town's actions have caused its property a loss in value exceeding $250,000. (Compl., DE # 1, at 10.) With these allegations, the court concludes that plaintiff sufficiently alleges more than consequential or incidental injury and thus states a claim for inverse condemnation. See Peach v. City of High Point, 683 S.E.2d 717, 723 (N.C. Ct. App. 2009) (recognizing the plaintiffs properly brought a claim for inverse condemnation where they alleged the city's updating its sewage system resulted in the seepage of sewage onto the plaintiffs' property rendering the property worthless).

5

The Town next argues that plaintiff's § 1983 claims are not ripe under the "state-litigation requirement" of Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172, 195 (1985).[3] Ripeness challenges implicate Article III limitations and prudential considerations and "may be properly raised in a Rule 12(b)(1) motion." United States v. Town of Garner, N.C., 720 F. Supp. 2d 721, 728 (E.D.N.C. 2010) (citation omitted). The party bringing suit has the burden of proving ripeness. Id.

Under Williamson County, "[f]or a takings claim against a state or its political subdivisions to be ripe in federal court, the plaintiff must first have sought compensation 'through the procedures the State has provided for doing so.'" Sansotta v. Town of Nags Head, 724 F.3d 533, 544 (4th Cir. 2013) (citation omitted). "A claimant who is in federal court because of his own litigation strategy and who has not yet sought a claim for compensation under state law in state court, usually cannot proceed on a Takings Clause claim . . . ." Camden Cty v. Northeastern Cmty. Dev. Corp., 263 F. Supp. 3d 556, 562 (E.D.N.C. 2017) (citing San Remo Hotel, L. P. v. City & Cty. of San Francisco, 545 U.S. 323, 346 (2005); Town of Nags Head v. Toloczko, 728 F.3d 391, 399 (4th Cir. 2013)). However, because the state-litigation requirement is "a prudential rather than jurisdictional rule, [the court] may determine that in some instances, the rule should not apply and [the court] still ha[s] the power to decide the case." Toloczko, 728 F.3d at 399; see also Camden Cty., 263 F. Supp. 3d at 562; Naegle Outdoor Advert., Inc. v. City of Durham, 803 F. Supp. 1068, 1072-73 (M.D.N.C. 1992).

Plaintiff initially contends that Williamson County's state-litigation requirement applies only to regulatory takings, rather than a physical invasion, like what occurred here. Numerous courts have rejected this argument. See, e.g., Kurtz v. Verizon N.Y., Inc., 758 F.3d 506, 512-13

---

[3] The Town does not argue that any other claims should be dismissed on this ground.

(2nd Cir. 2014); Severance v. Patterson, 566 F.3d 490, 497 (5th Cir. 2009); Pascoag Reservoir & Dam, LLC v. Rhode Island, 337 F.3d 87, 91-92 (1st Cir. 2007); Daniel v. Cty. of Santa Barbara, 288 F.3d 375, 382 (9th Cir. 2002); Brinkman v. Weston & Sampson, Inc., No. 3:16-CV-169-JFA, 2016 WL 1258384, *3 (D.S.C. Mar. 31, 2016). Courts also apply the state-litigation requirement to procedural "due process claims arising from the same nucleus of facts as a takings claim." Kurtz, 758 F.3d at 515 (citing cases); see also Braun v. Ann Arbor Charter Tp., 519 F.3d 564, 572 (6th Cir. 2008) (finding the plaintiffs' due process claim was subject to the Williamson County rule because that claim was ancillary to their takings claim).

Here, plaintiff's § 1983 due process claim arises from the same facts and relies on the same injuries as alleged in its § 1983 takings claim. As such, that due process claim is subject to the state-litigation requirement.

Recognizing that it did not avail itself of North Carolina's compensation procedures under § 40A-51 before filing this action, plaintiff argues that the court should waive this requirement. As recognized above, in some cases, courts will not require a claimant to first utilize state procedures before suing in federal court. However, this case is distinguishable from those cases where the courts exercised their prudential discretion to avoid piecemeal litigation, see Toloczko, 728 F.3d at 399; Camden Cty., 263 F. Supp. 3d at 562, or to avoid an exercise in futility because had the claimant properly used state procedures, state case law made clear no compensation was due, Naegle, 803 F. Supp. at 1072-73. In contrast, in this case, plaintiff has declined to pursue available procedures within the limitations period. By its own conduct, plaintiff has permanently prevented its § 1983 takings and due process claims from ripening. Under such circumstances, the court declines to exercise its discretion to permit plaintiff's § 1983 claims to proceed. See Holliday Amusement Co. of Charleston v. South Carolina, 493 F.3d

404, 408 (4th Cir. 2007) ("At least three circuits have dismissed the federal claims of a plaintiff who failed to use state procedures before they were time-barred, even though the inability to file in state court meant plaintiff 'ha[d] permanently prevented the claim from ever ripening.'" (quoting Liberty Mut. Ins. Co. v. Brown, 380 F.3d 793, 799 (5th Cir. 2004), and citing Pascoag, 337 F.3d at 93 n.5; Harbours Pointe of Nashotah, LLC v. Vill. of Nashotah, 278 F.3d 701, 706 (7th Cir. 2002))). Because plaintiff did not avail itself of the procedures North Carolina provides for compensation under § 40A-51 before filing suit here, its § 1983 claims are not ripe and will be dismissed.

The Town's motion to dismiss is GRANTED IN PART and DENIED IN PART. Plaintiff's § 1983 claims are DISMISSED WITHOUT PREJUDICE. Against the Town, plaintiff's claims for negligence, inverse condemnation (to the extent brought directly under the United States and North Carolina Constitutions), and violations of the North Carolina Constitution under Corum remain.

This 20 September 2018.

_____
W. Earl Britt
Senior U.S. District Judge