IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CV-215-BR

| | |
|---|---|
| FRESENIUS MEDICAL CARE HOLDINGS, INC. doing business as FRESENIUS MEDICAL CARE NORTH AMERICA, | )<br>)<br>)<br>) |
| Plaintiff, | ) ORDER |
| v. | )<br>) |
| TOWN OF LILLINGTON, et al., | )<br>) |
| Defendants. | ) |

This matter is before the court on defendant No. 1 Chinese Restaurant's ("No. 1 Chinese" or "defendant") motion to dismiss, (DE ## 28, 68), which the court converted to one for summary judgment on the statute of limitations issue only, (DE # 75). Plaintiff Fresenius Medical Care Holdings, Inc. ("Fresenius" or "plaintiff") filed a response in opposition to summary judgment on the statute of limitations issue. (DE # 79.) Thereafter, defendant formally moved for summary judgment and filed a reply. (DE ## 80, 81.) This issue is ripe for disposition.

## I.  BACKGROUND

Fresenius alleges "a sewage line which serviced the facilities of both [p]laintiff and [d]efendant became clogged," due to "[d]efendant's continued and repeated dumping of kitchen waste, cooking oils, and grease into the sewage system." (Pl.'s Resp., DE # 79, at 2.) In an attempt to remedy the clogged line, Fresenius contends the Town of Lillington applied high pressure water to the clog which "caused raw sewage and kitchen grease to back up and overflow into [its] [f]acility." (Compl., DE # 1, at 3.) This flooding occurred and was observed on 21 April 2014. (Pl.'s Am. Resp. to Req. for Admis., DE # 81-1, at 3–4.) Fresenius then hired

Restoration & Reconstruction, Inc. ("Servpro") to immediately remediate the flooding. (Id. at 4; Compl., DE # 1, at 3.) Servpro performed remediation services at Fresenius' facility on 21 April 2014. (Pl.'s Am. Resp. to Req. for Admis., DE # 81-1, at 5.) Within months of this incident,[1] "[p]laintiff's employees and occupants began to notice 'fungal growth' around the facility's floor tiles." (Pl.'s Resp., DE # 79, at 3 (quoting Hillmann Report, DE # 77-2, at 1; McDonald Decl., DE # 79-1, at 6).)[2] In October 2014, Fresenius hired Arcadis G&M of North Carolina, LLC ("Arcadis") to assess the damage to the facility. (Id.; see also Compl., DE # 1, at 3.) Arcadis concluded the damage to Fresenius' facility resulted from the April 2014 flood. (See Pl.'s Resp., DE # 79, at 4.)

Fresenius filed this action alleging negligence of No. 1 Chinese on 4 May 2017. (Compl., DE # 1, at 11.) On 31 August 2017, No. 1 Restaurant at Lillington, Inc. ("No. 1 Restaurant at Lillington") moved to dismiss the complaint contending the named defendant, No. 1 Chinese, was not an entity capable of being sued. (No. 1 Restaurant at Lillington's Mot. to Dismiss, DE # 28, at 1.) On 24 September 2018, the court denied this motion to dismiss and entered default against No. 1 Chinese, which had not yet made an appearance in the case. (DE # 52, at 3.) On 10 May 2019, the court set aside the entry of default and on 4 September 2019, allowed No. 1 Chinese to adopt No. 1 Restaurant at Lillington's previously filed motion to dismiss. (DE ## 65, 73.) The court then converted the motion to dismiss to one for summary judgment on the statute of limitations issue. (DE # 75.)

---

[1] The point at which Fresenius contends it discovered the fungal growth is uncertain, ranging from one to six months after the flood. (See Pl.'s Resp., DE # 79, at 3.)
[2] Fresenius filed the Hillmann Report with its provisional response brief at docket entry 77. After the court granted Fresenius' motion for extension of time, Fresenius filed a finalized response brief but did not refile this exhibit. (See DE # 79.) Because the exhibit was filed with the provisional response and is cited in the final response brief, the court will consider it.

2

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the record reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). "Ordinarily, the question of whether a cause of action is barred by the statute of limitations is a mixed question of law and fact. However, when the bar is properly pleaded and the facts are admitted or are not in conflict, the question of whether the action is barred becomes one of law and summary judgment is appropriate." Pembee Mfg. Corp. v. Cape Fear Constr. Co., 329 S.E.2d 350, 353 (N.C. 1985) (internal citations omitted); See Rothmans Tobacco Co. v. Liggett Grp., Inc., 770 F.2d 1246 (4th Cir. 1985) (affirming grant of summary judgment barring suit based on the statute of limitations).

## III. DISCUSSION

Fresenius makes both procedural and substantive arguments in opposition to No. 1 Chinese's statute of limitations defense. The court will address these arguments in turn.

### A. Procedural Considerations

Fresenius contends "it would be reversible error for this [c]ourt to *sua sponte* rule on [the statute of limitations] issue." (Pl.'s Resp., DE # 79, at 9.) Here, No. 1 Chinese specifically pled the statute of limitations as a defense: "Plaintiff's claims against No. 1 Chinese Restaurant, and any and all restaurant defendants are barred by the applicable statutes of limitation." (No. 1 Chinese's Answer, DE # 67, at 2.) No. 1 Chinese also adopted No. 1 Restaurant at Lillington's previously filed motion to dismiss and supporting memorandum, which specifically incorporates

3

the affidavit of Mei Fend Xiao. (Adopted Mot. to Dismiss, DE # 28, at 2.) That affidavit also specifically raises a statute of limitations defense:

> The incident alleged in the complaint wherein the sewer line backed up into the [p]laintiff's building occurred in April of 2014. The pleadings in this case were not filed until May 4, 2017. The cause of action alleged against the restaurant is based on negligence, and the three year [s]tatute of [l]imitations had run at the time of the filing of the complaint."

(Xiao Aff., DE # 28-1, at 2.) Additionally, No. 1 Chinese briefed its statute of limitations defense in its motion to set aside entry of default. (Mot. to Set Aside, DE # 57, at 11–12.) Therefore, No. 1 Chinese raised the statute of limitations defense. See Bonestell v. North Topsail Shores Condominiums, Inc., 405 S.E.2d 222, 224 (N.C. Ct. App. 1991) (holding that pleading the statute of limitations as an affirmative defense "was sufficient to put the court and parties on notice that the timing of the lawsuit was an issue"); cf. Eriline Co. S.A. v. Johnson, 440 F.3d 648, 653–54 (4th Cir. 2006) (noting the statute of limitations defense may be waived when defendant fails to raise it in its answer).

Because No. 1 Chinese's motion to dismiss specifically incorporated materials outside of the pleadings, which the court intended to consider, it converted the motion to dismiss to one for summary judgment on the statute of limitations issue. (DE # 75.) The court allowed Fresenius 21 days to file any pertinent materials and allowed No. 1 Chinese time to file any responsive materials. (Id.) Thus, not only was the defense raised by No. 1 Chinese, but both parties have had an opportunity to brief the issue. This issue is properly before the court.

**B. Substantive Considerations**

*1. Applicable statute of limitations*

The parties disagree as to the applicable statute of limitations period. Fresenius contends the six-year statute of limitations for damages arising out of improvements to real property

4

applies because "water and sewer lines are considered 'improvements to real property' in North Carolina" under N.C. Gen. Stat. § 1-50(a)(5)(b)(3-5) (Pl.'s Resp., DE # 79, at 16 .) No. 1 Chinese contends the three-year statute of limitations applicable to negligence actions under N.C. Gen. Stat. § 1-52(16) governs this action. (Def.'s Mem. Supp., DE # 81, at 3.)

"The purpose of section 1-50(a)(5) is to protect from liability those persons who make improvements to real property." Bryant v. Don Galloway Homes, Inc., 556 S.E.2d 597, 600 (N.C. Ct. App. 2001). Thus, "N.C. Gen. Stat. § 1-50[(a)](5) applies to defective improvements to real property by a materialman, meaning one who furnishes or supplies materials used in building construction, renovation or repair." Monson v. Paramount Homes, Inc., 515 S.E.2d 445, 447 (N.C. Ct. App. 1999) (citing Forsyth Memorial Hospital v. Armstrong World Indus., 444 S.E.2d 423 (N.C. 1994)). Here, Fresenius alleges No. 1 Chinese negligently disposed of grease and kitchen waste which caused a sewer line to become clogged and ultimately resulted in the flooding of its facility. (Compl., DE # 1, at 12.) No. 1 Chinese, a restaurant, is not at all involved in the construction, renovation, or repair of improvements to real property. Even accepting as true Fresenius' argument that sewer lines constitute "improvements to real property," where as here, the harm does not relate to or arise from the construction or repair of the line and was not caused by anyone responsible for those tasks, N.C. Gen. Stat. § 1-50(a)(5) is inapplicable. Compare East Carolina Masonry, Inc. v. Weaver Cooke Constr., LLC, No. 5:15-CV-252, 2016 U.S. Dist. LEXIS 29029, at *13 (E.D.N.C. Jan. 20, 2016) (applying N.C. Gen. Stat. § 1-50(a)(5) in action by project developer against contractors who built the a condominium complex), and Whitehurst v. Hurst Built, 577 S.E.2d 168, 169 (N.C. Ct. App. 2003) (applying N.C. Gen. Stat. § 1-50(a)(5) to claims against a contractor, arising out of the installation of a synthetic stucco system), and Nolan v. Paramount Homes, Inc., 518 S.E.2d 789, 790 (N.C. Ct.

App. 1999) (applying N.C. Gen. Stat. § 1-50(a)(5) where the lawsuit arose out of a construction company's construction and sale of a home to plaintiff), with Harrison v. City of Sanford, 627 S.E.2d 672, 674 (N.C. Ct. App. 2006) (applying N.C. Gen. Stat. § 1-52(16) in suit by a homeowner against the city for failing to remedy a sewage overflow on the homeowner's property). Thus, this negligence action is governed by the three-year statute of limitations set forth in N.C. Gen. Stat. § 1-52(16).

   2. *Discovery Rule*

Assuming the three-year statute of limitations applies, Fresenius nonetheless contends this action was timely filed. (Pl.'s Resp., DE # 79, at 11.) Under the common law rule, a cause of action accrues at the time the injury occurs, "even when the injured party is unaware that the injury exists." Pembee, 329 S.E.2d at 353 (citation omitted). N.C. Gen. Stat. § 1-52(16) modifies this rule to protect plaintiffs in the case of latent injuries, "by providing that a cause of action does not accrue until the injured party becomes aware or should reasonably have become aware of the existence of the injury." Id. at 354 (citing Raftery v. Wm. C. Vick Constr. Co., 230 S.E.2d 405 (N.C. 1976)). "It does not change the fact that once some physical damage has been discovered the injury springs into existence and completes the cause of action." Marshburn v. Associated Indem. Corp., 353 S.E.2d 123, 128 (N.C. Ct. App. 1987) (quoting Pembee Mfg. Corp. v. Cape Fear Constr. Co, 317 S.E.2d 41, 43 (N.C. Ct. App. 1984)). "It does not matter that further damage could occur; such further damage is only aggravation of the original injury." Pembee, 329 S.E.2d at 354 (citation omitted). Thus, N.C. Gen. Stat. § 1-52(16) delays accrual "'in the case of latent damages until the plaintiff is aware he has suffered damage, not until he is aware of the full extent of the damages suffered.'" McCarver v. Blythe, 555 S.E.2d 680, 683 (N.C. Ct. App. 2001) (quoting Pembee, 317 S.E.2d at 43).

6

According to Fresenius, it did not discover the property damage "until '[s]everal months following the incident,' when [p]laintiff's employees and occupants began to notice 'fungal growth' around the facility's floor tiles." (Pl.'s Resp., DE # 79, at 3 (quoting Hillmann Report, DE # 77-2, at 1; McDonald Decl., DE # 79-1, at 6).) The cause of the discoloration and growth was unknown until at least 13 November 2014, when the Arcadis Report was issued. (Id.) Thus, it contends, the statute of limitations period did not begin to run until this date. (Id. at 14.) Defendant, however, contends the statute of limitations began to run on 21 April 2014. (Def.'s Mem. Supp., DE # 81, at 7.) Defendant asserts there is no dispute that the flood incident occurred and was at least partially remedied on that date. (Id.)

The flood incident occurred on 21 April 2014. (Id.; Pl.'s Am. Resp. to Req. for Admis., DE # 81-1, at 3–4.) On that day: an individual employed by Fresenius observed standing water in a drain within Fresenius' building, (Pl.'s Am. Resp. to Req. for Admis., DE # 81-1, at 3); after an unsuccessful attempt to unclog a sewer line, "dirty water flowed into the [p]laintiff's building," flooding the clinic, (id. at 4); Fresenius contacted ServPro and requested it clean up the water located in the clinic, (id.; Servpro Contract, DE # 81-3, at 1); and ServPro performed remediation/clean up services in the clinic, (Pl.'s Am. Resp. to Req. for Admis., DE # 81-1, at 5; see also Hillmann Report, DE # 77-2, at 2 ("Servpro removed impacted building materials which consisted of two of five impacted carpets; the remaining building materials were treated, dried and left in place.")). Thus, there is no dispute that Fresenius was aware of the flooding on that date.[3]

---

[3] Although Fresenius originally alleged the flood occurred in June 2014, it later concluded the flood "probably occurred in late April 2014." (Letter from Counsel, DE # 57-7, at 1.) In its amended response to the requests for admissions, Fresenius admits, upon information and belief, that the flood occurred on 21 April 2014. (Pl.'s Am. Resp. to Req. for Admis., DE # 81-1, at 6.) Fresenius also admits, upon information and belief, that there was not a separate water incident in June 2014. (Id.)

7

Fresenius seemingly suggests a distinction should be made between the flood incident and the mold/fungal growth. (See Pl.'s Resp., DE # 79, at 13–14.) The plaintiff in Pembee made a similar argument. There, the plaintiff filed suit regarding the construction of a defective roof more than three years after it first discovered leaks in the roof. Pembee, 329 S.E.2d at 354. Attempting to survive the statute of limitations, the plaintiff argued "that a distinction should be made between the leaks in the roof and the blistering caused by entrapment of moisture, and that this distinction create[d] a material issue of fact." Id. at 354. The court rejected this argument, noting:

> Plaintiff's claim is based on the assertion that its roof is defective. Plaintiff clearly knew more than three years prior to bringing suit that it had a defective roof, yet took no legal action until the statute of limitations had run. The fact that further damage which plaintiff did not expect was discovered does not bring about a new cause of action, it merely aggravates the original injury.

Id. (citation omitted).

Comparably, in Marshburn, the plaintiffs filed suit based on damage sustained from a lightning strike. 353 S.E.2d at 128. In affirming the trial court's grant of summary judgment, the court recognized:

> The immediate and obvious damage to the structure, for which [the plaintiffs] received payment from defendant [insurance company], made it apparent to plaintiffs that their home had been damaged, and their cause of action against defendants accrued at that time. The fact that evidence of latent damages was discovered more than three years later does not restart the statutory limitations period.

Id.; see also McCarver, 555 S.E.2d at 683 (holding where the defendant knew of some damage to the deteriorating property, discovery of additional damages seven years later does not circumvent the statute of limitations).

In this case, Fresenius' action is based on the assertion that No.1 Chinese negligently clogged a sewer line, the unclogging of which caused Fresenius' property to flood. (Compl., DE

8

Case 5:17-cv-00215-BR   Document 82   Filed 07/06/20   Page 8 of 10

# 1, at 11–12.) The record reveals Fresenius knew there was a sewage flood which damaged its property in April 2014.  Although plaintiff may not have known the full extent of the damage until months later, the fact that the property was damaged by the flood was apparent on 21 April 2014.  Much like the blistering of the roof was not a separate injury sufficient to restart the statute of limitations, nor is the noticing of mold here.  See Pembee, 329 S.E.2d at 355.  In this case, there was one injury—a flood—the damages from which were exacerbated by the mold.

Plaintiff's argument to the contrary, relying on Baum v. John R. Poore Builder, Inc., 643 S.E.2d 607 (N.C. Ct. App. 2007), and Williams v. Houses of Distinction, Inc., 714 S.E.2d 438 (N.C. Ct. App. 2011), is unavailing.  In Baum, the plaintiffs noticed cracks in their deck tiles in June 2000.  643 S.E.2d at 609.  As a result, they contacted their builder to have the tiles replaced or repaired.  Id.  Their builder directed them to contact the tile company, who replaced the tiles and assured the plaintiffs there were no structural problems in the deck causing the cracked tiles.  Id.  Under those circumstances, the court held that noticing cracked tiles was insufficient to put the plaintiffs on notice of structural defects in the deck.  Id. at 611.  Similarly, in Williams, the court held that noticing a "handful" of leaks around different windows and doors, intermittently over the course of years, when the plaintiffs were referred to the distributor for repairs and assured the leaks were corrected, was insufficient to place them on notice of structural defects in their home.  714 S.E.2d at 445.  The facts of these cases differ significantly from Fresenius'.  Here, Fresenius did not notice sporadic product defects, but rather knew its property flooded with "raw sewage and kitchen grease" on 21 April 2014.  (Compl., DE # 1, at 3.)  It knew the "flooding damage" required immediate remediation.  (Id.)  It was aware of property damage allegedly caused by No. 1 Chinese's negligence on 21 April 2014, yet did not file this action until 4 May 2017

9

## IV. CONCLUSION

The record establishes that Fresenius' property flooded on 21 April 2014 and it was aware of some damage caused by this event on that day. It filed this action more than three years later, outside the applicable statute of limitations. Accordingly, summary judgment is GRANTED. The Clerk is DIRECTED to close this case.

This 6 July 2020.

_____
W. Earl Britt
Senior U.S. District Judge